[Cite as *State v. Brady*, 2024-Ohio-269.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230251 |
|  |  | C-230252 |
| Plaintiff-Appellee, | : | TRIAL NOS. 22CRB-17215 |
|  |  | 23CRB-4021 |
|  | : |  |
| vs. |  |  |
|  | : | *O P I N I O N.* |
| CHRISTOPHER BRADY, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Reversed and Appellant Discharged in C-230251;
Affirmed in C-230252

Date of Judgment Entry on Appeal: January 26, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Christopher Brady appeals his convictions, following a bench trial, for domestic violence and violating a protection order. In three assignments of error, he challenges the sufficiency and the weight of the evidence supporting his convictions and argues that he was denied his right to the effective assistance of counsel.

{¶2} Because the state failed to establish venue for the offense of violating a protection order, as well as failed to present sufficient evidence that Brady acted recklessly, we reverse Brady's conviction and discharge him from further prosecution for that offense. The judgment of the trial court is otherwise affirmed.

## I. Factual and Procedural Background

{¶3} A complaint was filed charging Brady with domestic violence after he engaged in a physical altercation with his then-girlfriend Shannon Hart in the home where they resided together. Hart subsequently obtained a domestic-violence protection order against Brady. The order applied to both Hart and her minor son. Included in the protection order was a provision prohibiting Brady from initiating any contact with Hart and her son, including calling them. After he placed several telephone calls to Hart, Brady was charged with violating a protection order.

{¶4} At the bench trial, Hart testified to the events that led to Brady being charged with domestic violence. She stated that on October 2, 2022, she and Brady had been in a relationship for three and a half years and resided in a home together on Kenwood Road. They were not on good terms the day of the offense and had slept

separately the night before. Because she "kind of knew the path it was going to take," Hart sent her son outside to play.

{¶5}   Hart testified that she attempted to leave the house herself, but that Brady grabbed her keys, which were attached to a lanyard around her neck, to prevent her from doing so. The two fell to the ground when Hart resisted. As they fell, Brady elbowed her in the left eye, and her arm hit his knee as they landed. Hart first testified that Brady held her on the ground for a minute before letting her get up, but she later stated that they wrestled on the ground for a minute or two after falling. Hart then tried to leave the through the front door, but Brady slammed it shut before she could do so. She testified that "I almost got out the front door and he made it just in time to slam my arm in the door. That's when the injury to my wrist happened." She further testified that "I tried to stick my arm in the door before he slammed it, but it didn't work out how I planned." Hart went to the hospital for her resulting injuries, and she explained that she suffered a black eye, bruising on her arm, and bruising and scratches on her wrist.

{¶6}   On cross-examination, Hart testified that, despite their altercation in October of 2022, she continued to reside with Brady until February of 2023. Defense counsel questioned her about a call that she placed to the police on March 11, 2023, reporting that Brady had violated his protection order by calling her several times. Hart denied calling the police in retaliation for Brady reporting her to a children's services agency, which resulted in her son being taken out of her home. Defense counsel moved into evidence and played for the court, over the state's objection, a body-worn camera video that depicted Hart's conversation with the police on March

11. After watching the video, Hart conceded that she told the officers that Brady had reported her to a children's services agency.

{¶7}    Hart clarified on redirect examination that her purpose in calling the police was to report Brady for violating the protection order. The protection order was admitted into evidence. Hart testified that Brady had placed the calls that resulted in the protection-order violation on March 10, 2023, and that she was able to recall the date because it was the day after she was released from jail in Warren County.

{¶8}    The trial court asked Hart several questions about her altercation with Brady, particularly concerning how she received the injuries to her forearm. Hart told the court that "[d]uring the struggle for my keys [] we fell to the ground." The court attempted to verify that the injury occurred when Hart hit the ground, and she responded, "I can't say a hundred percent that it was. I think it was his knee that I landed on when we hit the ground, because he slammed me back and I landed on him." She further stated that "he had his hand on top of mine around my keys, and then he put his arm around me like this and slammed me to the ground."

{¶9}    Brady testified, presenting a different version of events than those testified to by Hart. According to Brady, he could tell that Hart was "high" on the morning of the offense based on her pupils, which he described as tiny and glossy. Brady saw a bottle of pills inside Hart's purse. Believing that she was abusing pills, Brady attempted to reach in the purse. Hart pulled the purse away, which caused its handle to break. Brady testified that Hart swung the purse at him. He caught it, but her momentum kept coming and they both fell into the dining room table and chairs before landing on the floor. Brady denied both grabbing a lanyard from around Hart's neck and intentionally hurting her.

4

{¶10} The trial court found Brady guilty of both domestic violence and violating a protection order. Brady now appeals.

## II. Sufficiency of the Evidence

{¶11} In his first assignment of error, Brady argues that his convictions were not supported by sufficient evidence.

{¶12} In reviewing a challenge to the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4.

### A. Violating a Protection Order

{¶13} Brady challenges the sufficiency of the evidence supporting his conviction for violating a protection order on two grounds. He argues that the state failed to establish venue and failed to present sufficient evidence that he acted recklessly. We agree with both arguments.

{¶14} "Under Article I, Section 10 [of the Ohio Constitution] and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, ¶ 13, quoting *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20; *State v. Thurmond*, 1st Dist. Hamilton No. C-220480, 2023-Ohio-2404, ¶ 7. While venue is not an element of an offense, it must be proved beyond a reasonable

5

doubt. *Foreman* at ¶ 13; *Thurmond* at ¶ 7. To establish venue, the state must prove "that the defendant committed the alleged offense or an element of the offense in the charging county." *Foreman* at ¶ 13. Venue can be established by direct or circumstantial evidence. *State v. Hinkston*, 1st Dist. Hamilton Nos. C-140448 and C-140449, 2015-Ohio-3851, ¶ 11. If venue is not established, the conviction must be reversed. *See Foreman* at ¶ 31.

**{¶15}** Because Brady failed to object below to the state's failure to establish venue, we review for plain error. *See Hinkston* at ¶ 10 (holding that "the failure to prove venue is plain error").

**{¶16}** Ohio's venue laws are codified in R.C. 2901.12. Because Brady was charged with violating a protection order based on his alleged placing of several telephone calls to Hart, the provisions of R.C. 2901.12(I)(1) are applicable. This provision states that:

> When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

R.C. 2901.12(I)(1). A "telecommunications device" includes both a telephone and cellular telephone. R.C. 2913.01(Y). Pursuant to R.C. 2901.12(I)(1), to establish venue, the state had to prove that Brady's telephone calls to Hart were either made or received in Hamilton County. The record contains no such evidence.

{¶17} While Hart testified that her home on Kenwood Road was located in Hamilton County, she did not testify that she was at her home when she received the telephone calls from Brady that led to him being charged with a violation of the protection order. In fact, Hart provided no testimony as to her location when she received Brady's telephone calls. She stated that Brady called her the day after she was released from jail in Warren County, but her testimony did not establish that she had returned to Hamilton County when the calls were received. Nor did Brady's testimony address the telephone calls to Hart or establish his location when the calls were made.

{¶18} Brady's telephone calls to Hart were discussed in the body-worn camera video that was admitted at trial. But the conversation between Hart and the responding officers with respect to these calls did not disclose the location of either Hart or Brady at the time that the calls were made or received.

{¶19} We accordingly hold that the record contains no evidence, either direct or circumstantial, that Brady's calls to Hart were made or received in Hamilton County, and that the state failed to establish venue beyond a reasonable doubt.

{¶20} Brady next argues that the state failed to present sufficient evidence that he acted recklessly. The state concedes this argument.

{¶21} Brady was convicted of violating a protection order in violation of R.C. 2919.27(A)(1), which provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section

7

2919.26 or 3113.31 of the Revised Code."[1] The mental state of recklessly is defined in R.C. 2901.22(C), which provides that "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶22} Other than Hart's testimony that Brady called her on March 10, the state introduced no evidence concerning the offense of violating a protection order. The record contains no evidence regarding the amount of times Brady called Hart, whether Brady was, in fact, the person placing the telephone calls, whether Hart answered the calls, or what Brady's purpose was in placing the calls. As the state concedes, the record contains no evidence that Brady recklessly violated the terms of the protection order.

{¶23} Because the state failed to establish that the offense of violating a protection order occurred in Hamilton County and failed to present sufficient evidence that Brady acted recklessly, Brady's conviction for violating a protection order must be reversed.

## B. Domestic Violence

{¶24} Brady contends that his conviction for domestic violence must be reversed because the state failed to present sufficient evidence that he acted knowingly.

{¶25} Brady was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Pursuant to R.C. 2901.22(B),

---

[1] The protection order in this case was issued pursuant to R.C. 2919.26.

"[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." A person is "presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Morris*, 1st Dist. Hamilton No. C-150421, 2016-Ohio-5490, ¶ 9, citing *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978).

{¶26} Hart testified that Brady slammed her to the ground while trying to gain hold of the keys that she wore in a lanyard around her neck, resulting in her suffering a black eye and bruising to her arm. Hart further testified that Brady slammed the front door shut while she was attempting to exit through it, resulting in an injury to her wrist which was caught in the door as it shut. Viewing this evidence in the light most favorable to the prosecution, as we are required to do when reviewing the sufficiency of the evidence, *see Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, at ¶ 12, we hold that the state presented sufficient evidence that Brady was aware that his conduct was likely to cause injury to Hart and that he knowingly caused her physical harm. Brady's conviction for domestic violence was supported by sufficient evidence.

{¶27} The first assignment of error is accordingly sustained in part and overruled in part.

### III. Ineffective Assistance

{¶28} In his second assignment of error, Brady argues that his trial counsel was ineffective for needlessly introducing credibility evidence on cross-examination, specifically the body-worn camera video from the officer that responded to Hart's

9

report that Brady violated the protection order. Brady argues that this evidence affected the outcome of the trial with respect to his conviction for violating a protection order and that he would not have been convicted of that offense but for this evidence.

{¶29} This assignment of error is rendered moot by our resolution of the first assignment of error, in which we determined that Brady's conviction for violating a protection order must be reversed because the state failed to establish venue and failed to present sufficient evidence that Brady recklessly violated the protection order, and we decline to address it. App.R. 12(A)(1)(c); *see State v. Sullivan*, 1st Dist. Hamilton Nos. C-130628 and C-130629, 2014-Ohio-3112, ¶ 12 (where conviction was reversed on venue grounds, assignments of error challenging manifest weight and arguing ineffective assistance were moot).

### IV. Manifest Weight of the Evidence

{¶30} In his third assignment of error, Brady argues that his conviction for domestic violence was contrary to the manifest weight of the evidence.[2]

{¶31} When reviewing a challenge to the manifest weight of the evidence, this court must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶32} Brady specifically contends that the manifest weight of the evidence shows that he did not act knowingly. We have already held that Hart's testimony, if

---

[2] Brady additionally contends that his conviction for violating a protection order was against the manifest weight of the evidence. But, having found that this conviction must be reversed on sufficiency grounds, this argument is moot.

believed, established that Brady knowingly caused her physical harm. While Brady provided a different version of events for the trial court to consider, the trial court was in the best position to judge the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Shepard*, 1st Dist. Hamilton No. C-190747, 2021-Ohio-964, ¶ 62. It was entitled to reject Brady's testimony that he did not grab a lanyard from around Hart's neck or intentionally hurt her, and to believe the testimony offered by Hart that Brady slammed her to the ground in an attempt to gain hold of her keys and slammed her wrist in the front door.

**{¶33}** This was not the rare case in which the trial court lost its way and committed a manifest miscarriage of justice in convicting Brady. *See Powell* at ¶ 16. We hold that Brady's conviction for domestic violence was supported by the manifest weight of the evidence and we overrule the third assignment of error.

## V. Conclusion

**{¶34}** Brady's conviction for violating a protection order is reversed, and he is discharged from further prosecution for that offense. The trial court's judgment is otherwise affirmed.

Judgment accordingly.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.