[Cite as *State v. Sutton*, 2025-Ohio-2469.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo          Court of Appeals No. L-24-1067

    Appellee                           Trial Court No. CRB23011830

v.

Ian Sutton                              **DECISION AND JUDGMENT**

    Appellant                         Decided: July 11, 2025

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

* * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Ian Sutton, from the judgment of the Toledo

Municipal Court. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Sutton sets forth two assignments of error:

I. There Was Not Sufficient Evidence to Convict Appellant, and the
Conviction Was Against the Manifest Weight of the Evidence.

II. Appellant's Conviction Offends the First Amendment of the United
States Constitution and Article I, Section 11 of the Ohio Constitution.

**Background**

{¶ 3}   Sutton was in a relationship with M.B. from 2017 through mid-2021.  M.B. sought a civil protection order ("CPO") against Sutton and on December 8, 2023, the trial court issued a CPO against Sutton and in favor of M.B.  The CPO stated in pertinent part:

> RESPONDENT SHALL NOT ABUSE, harm, attempt to harm, threaten, follow, stalk, harass, force sexual relations upon or commit sexually oriented offenses against the protected person[] . . .
>
> ALL OF THE PROVISIONS BELOW ALSO APPLY TO RESPONDENT . . .
>
> 3. RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT with the protected persons named in this Order . . . Contact includes, but is not limited to, landline, cordless, cellular or digital telephone; text; instant messaging; fax; e-mail; voicemail; delivery service; social media; blogging; writings; electronic communications; posting a message; or communications by any other means directly or through another person.

{¶ 4}   On December 11, 2023, a criminal complaint was filed in the trial court alleging that Sutton violated the terms of the CPO when he tried to contact M.B., by tagging her on Facebook, posting images and slandering her on social media.  The complaint further alleges "[t]his occurred in the City of Toledo, Lucas County, Ohio" and lists a Toledo address as the location of the offense.

{¶ 5}   On February 22, 2024, a bench trial was held, and Sutton was found guilty of violating the CPO as Sutton was served with the CPO, he made a post about M.B. then he went back and amended the post to include a tag which specifically reached out to M.B.  The court also set forth that "[b]ased on Section 3, the post in and of itself was a violation" of the CPO.  Sutton was sentenced.  He appealed.

2.

**First Assignment of Error**

**Sutton's Arguments**

{¶ 6}   Sutton argues there was not sufficient evidence to convict him, and his conviction was against the manifest weight of the evidence.  Sutton asserts, concerning venue, his case is like *State v. Brady*, 2024-Ohio-269, ¶ 14 (1st Dist.), and he cites to, inter alia:

> "Under Article I, Section 10 [of the Ohio Constitution] and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Foreman*, . . . 2021-Ohio-3409, . . . ¶ 13, quoting *State v. Hampton*, . . . 2012-Ohio-5688, . . . ¶ 20; *State v. Thurmond*, . . . 2023-Ohio-2404, ¶ 7 [(1st Dist.)].  While venue is not an element of an offense, it must be proved beyond a reasonable doubt.  *Foreman* at ¶ 13; *Thurmond* at ¶ 7.  To establish venue, the state must prove "that the defendant committed the alleged offense or an element of the offense in the charging county." *Foreman* at ¶ 13.  Venue can be established by direct or circumstantial evidence. *State v. Hinkston*, . . . 2015-Ohio-3851, ¶ 11 [(1st Dist.)].  If venue is not established, the conviction must be reversed.  *See Foreman* at ¶ 31.

{¶ 7}   Sutton contends venue is proper where the telecommunication was made or received.  He submits that according to R.C. 1901.02, Toledo Municipal Court has jurisdiction over Toledo, Washington Township and Ottawa Hills, and M.B. affirmatively testified that she was in Holland when she became aware of the communications, which is outside of the territorial jurisdiction of the court.  Sutton argues that although M.B. testified that the Holland address was in Toledo, it is not, "and a Court is presumed to have familiarity with the streets and landmarks within the geographic jurisdiction of the court over which she presides."  In support, he cites to *State v. Fox*, 2023-Ohio-1912.

3.

{¶ 8} Sutton further asserts that the location for the origin of the telecommunications also remains a mystery because M.B. was not able to provide evidence of Sutton's location when the posts were allegedly made, and Sutton did not testify as to his location when he made the posts. Sutton insists there is no competent credible evidence in the record as to venue, so his conviction must be reversed on a finding of plain error for failure to prove venue.

{¶ 9} Sutton also argues that although it is clear from the record that he posted about M.B., the conclusion that he engaged in direct contact with her is against the manifest weight of the evidence. Sutton contends M.B. testified that on the date of the post she had blocked Sutton and when her friends told her about the post, she unblocked him and then was able to see the post. Sutton further asserts the language from Facebook makes it clear that he was talking *about* M.B., not *to* M.B. and he denied tagging her.

{¶ 10} In addition, Sutton submits the evidence fails to support the mens rea of the crime, as the city had to show that he acted recklessly, but he did not act with heedless indifference when making the posts. Sutton maintains he blocked M.B., therefore he reasonably believed that M.B. would not be contacted through his action on Facebook. He cites to R.C. 2901.22(C) in support.

**The City's Arguments**

{¶ 11} The city argues that it presented evidence that the crime occurred in the trial court's jurisdiction, as M.B. resides in two places. The city notes Sutton claims the crime took place outside of the trial court's jurisdiction, since M.B. said her address was in Holland. The city acknowledges that M.B. did state her address was in Holland, but in

4.

addition she stated: "I also reside at . . . Rio Street. Because I'm a caregiver for my grandmother. And that's what is placed on the protection order." M.B. was asked if she was "in Toledo . . . when you received these attempts to contact or correspondences?" M.B. replied, "Yes."

{¶ 12} The city observes that Sutton also claims that he did not violate the order, as he had no contact with M.B., but the city asserts that M.B. testified in the affirmative after she was asked, "Whether it be December 9th or 10th or 11th, at any point does [Sutton] contact you directly through social media[?]" The city asked M.B. "how does that take place" and she responded, "So I was tagged. It just said Ian Sutton tagged you in this post. . . [T]agging just means that my name was put into the post and hyperlinked to where it notifies me, as a person who was being tagged. That hey, you're being tagged in this post. Brings it to my attention. And so that way I can view what was - what I was being tagged in." The city submits that by Sutton tagging M.B. in his Facebook posting, Sutton actively violated the terms of the protection order by contacting M.B. through social media. The city maintains Sutton's conviction was supported by the manifest weight of the evidence.

## Standards

{¶ 13} When reviewing the sufficiency of the evidence, an appellate court is to examine the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

5.

proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict should not be disturbed "unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

{¶ 14} The criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Harvey*, 2022-Ohio-4650, ¶ 52 (6th Dist.), citing *State v. Wilson*, 2007-Ohio-2202, ¶ 25. In deciding whether a conviction is against the manifest weight of the evidence, an appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Prescott*, 2010-Ohio-6048, ¶ 48 (6th Dist.), citing *State v. Thompkins*, 1997-Ohio-52. The appellate court does not view the evidence in a light most favorable to the State or city; rather, the court "sit[s] as a 'thirteenth juror' and scrutinize[s] 'the factfinder's resolution of the conflicting testimony.'" *State v. Lewis*, 2022-Ohio-4421, ¶ 22 (6th Dist.), quoting *State v. Robinson*, 2012-Ohio-6068, ¶ 15 (6th Dist.).

{¶ 15} As to plain errors, Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For an error to be a plain error under Crim.R. 52(B), three prongs must be satisfied: (1) there must be an error, which means a deviation from a legal rule; (2) the error must be an obvious defect in the trial proceeding; and (3) the error, with

6.

reasonable probability, was prejudicial, in that it affected the outcome of the trial. *State v. Knuff*, 2024-Ohio-902, ¶ 117, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

**Law**

{¶ 16} Regarding venue, while it is not a material element of a crime, the city must still prove venue beyond a reasonable doubt. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). Venue may be proven by express terms, or it may be established by all of the facts and circumstances viewed in the light most favorable to the city. *Id.* In addition, R.C. 2901.12(I)(1) provides:

> When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

> A telecommunications device, as provided in R.C. 2901.12(Y):

> means any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem.

> With respect to violating a CPO, R.C. 2919.27(A) states:

> No person shall recklessly violate the terms of any of the following:
> . . .

> (2) A protection order issued pursuant to section . . . 2903.214 of the Revised Code. . .

7.

Recklessly is defined in R.C. 2901.22:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 17} "Heedless" means "not giving attention to a risk or possible difficulty." *Cambridge Dictionary Online*, https://dictionary.cambridge.org/dictionary/english/heedless (accessed June 4, 2025). "Indifference" means "lack of interest in someone or something." https://dictionary.cambridge.org/dictionary/english/indifference (accessed June 4, 2025).

**Analysis**

{¶ 18} Upon review, Sutton recognizes that he did not object to the trial court's venue so his argument that the city failed to prove venue must be examined for plain error.

{¶ 19} A review of the record shows that it consists of M.B.'s testimony that she lived at two addresses, one in Holland, Ohio, and one on Rio Street, and she verified that she was in Toledo, Ohio when she received the attempts by Sutton to contact or correspond with her on Facebook. Thus, based upon the record and the applicable law, we find there was adequate evidence to establish the trial court's venue was proper, as M.B. was within the trial court's jurisdiction when she was notified that Sutton tagged her in a Facebook post. Therefore, we find no plain error as to venue.

8.

{¶ 20} Sutton also argues that the conclusion that he engaged in direct contact with M.B., when he posted about her on Facebook, is against the manifest weight of the evidence. He further contends that he was not reckless in making the post because he had blocked her on Facebook and she had blocked him.

{¶ 21} A review of the record reveals that an exhibit was offered at trial which is a screenshot from M.B.'s phone of her Facebook account that shows, inter alia, on "December 11, 2023 [at] 11:03 AM . . . Ian Sutton mentioned you in a post. Review now. 10 m[inutes.]" In addition, M.B. testified that when she opened Facebook, she was directed to a post on Sutton's page that he made which was "[m]ore slander . . . It just went into about how the protection order was fake. . . [I]t was a lot of the negative things. And then also it had a list of my colleagues . . . saying hey . . . she's not tagged in this because of some . . . obscenities. Also a video of me was also a part of that post where I was undressed." M.B. further testified "that video was taken when we were in a relationship with one another. And I was undergoing the Domestic Violence from Ian. And it was about him humiliating and harassing me. And I remember sitting in a hallway, and I was unclothed. And I was crying, and he was videotaping me." M.B. testified that she saw the video that Sutton had posted of her on his Facebook page on December 11, 2023, and she was tagged in it; she took a screenshot and saved the video. M.B. also testified that the video was forwarded to her, and about five people notified her of the video. The video was offered as an exhibit at trial.

{¶ 22} We find, based upon the record and the applicable law, that Sutton's conduct violated the terms of the CPO which stated he was to have *no contact with M.B.*

9.

*or initiate contact* with her, which contact includes but is not limited to social media, posting a message or communications by other means directly or through another person. Sutton admitted that he posted about M.B. on Facebook, but he denied tagging her. However, the record reveals that M.B. testified at trial that Sutton had tagged her in his post and the screenshot of M.B.'s Facebook account was presented which shows, inter alia, that on "December 11, 2023 [at] 11:03 AM . . . Ian Sutton mentioned you in a post. We find this evidence shows that Sutton contacted or initiated contact with M.B. via Facebook in violation of the terms of the CPO.

{¶ 23} Moreover, while Sutton claims he was not reckless in making the Facebook post about M.B. because he reasonably believed that she would not be contacted as he had blocked her and she had blocked him, we find such conduct was reckless. Sutton acted with heedless indifference to the consequences of posting about M.B. on Facebook as he did not pay attention to or have an interest in whether the post would lead to contact with M.B. It is evident that Sutton initiated contact with M.B. through social media, as she received a notification that he mentioned her on Facebook.

{¶ 24} Having reviewed the record, weighed the evidence and all reasonable inferences, considered the credibility of the witnesses and resolved any conflicts in the evidence, we conclude that Sutton's conviction for violating the CPO is not against the manifest weight of the evidence. Accordingly, Sutton's first assignment of error is not well-taken.

10.

**Second Assignment of Error**

**Sutton's Arguments**

{¶ 25} Sutton argues his conviction offends the First Amendment of the United States Constitution and Article I, Section 11 of the Ohio Constitution. He observes that he did not raise this constitutional issue in the trial court, so absent plain error, he waived his constitutional arguments.

{¶ 26} Sutton takes issue with the trial court's indication at the conclusion of trial, that "'[b]ased on Section 3 [of the CPO], the post in and of itself was a violation'" of the CPO. Sutton submits CPOs "with the blessing of the Supreme Court, all contained prior restraint concerning posts about [M.B.]." Sutton maintains that interpreting CPOs to include routine prior restraint contradicts the Supreme Court of Ohio's holding in *Bey v. Rasawehr*, 2020-Ohio-3301.

{¶ 27} Sutton observes that the trial court stated in its findings that "[t]he act of posting about [M.B.] violated your protection order." Sutton contends that speech may not be categorically suppressed by means of a prior restraint without a judicial determination that the speech would be unprotected by the First Amendment. He argues he made posts, not to M.B., but to the general voting public, criticizing elected officials who worked at "McCourt" and disputing the veracity of M.B.'s "slander," noting that the truth of M.B.'s statements was never tested. He submits his posts are political speech which are afforded the highest protections of the First Amendment. He sets forth that political speech "'is at the core of what the First Amendment is designed to protect.'" *Morse v. Frederick*, 551 U.S. 393, 403 (2007), quoting *Virginia v. Black*, 538 U.S. 343, 11.

365 (2003). Sutton further asserts that interpreting CPOs to prohibit posts about the protected person that are not imminent threats of lawless action does not serve to keep the protected person safe from anything other than hurt feelings, which is a right to which the protected person is not entitled.

**The City's Arguments**

{¶ 28} The city notes that Sutton claims the trial court erred when it stated that posting about the victim was a violation of the CPO, however the city argues the court ruled, prior to making the statement, that Sutton violated the CPO by contacting M.B through tagging her in a post. The city further asserts the trial court's statement about any post Sutton made was the court's frustration in dealing with someone who refused to acknowledge any responsibility for his actions, so if there was an error, it was harmless error. The city insists Sutton's case is not like *Bey*. The State submits that in *Bey*, the court overruled a provision in the CPO which prohibited the defendant from making future social medial posts about the victim, while in Sutton's case, the trial court convicted him for his actions, not his potential actions.

**Law**

{¶ 29} A foundation of the law in the United States is that under the First Amendment, the "'government [generally] has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983), quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). Restrictions are "presumptively unconstitutional" and must demonstrate they

12.

are "the least restrictive means to achieve a compelling state interest." *Bey* at ¶ 22, citing *Reed v. Gilbert,* 576 U.S. 155, 163 (2015).

{¶ 30} Content of speech can be prohibited under certain circumstances including "'advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words'; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent . . .'" *Bey* at ¶38, quoting *United States v. Alvarez*, 567 U.S. 709, 717 (2012).

{¶ 31} The *Bey* court held that "a regulation of speech 'about' a specific person (or likely any other specific subject of discussion) is a regulation of the content of that speech and must therefore be analyzed as a content-based regulation." *Id.* at ¶ 33. The court set forth "'[t]he goal of R.C. 2903.214 is to allow the police and the courts to act *before* a victim is harmed by a stalker.'" (Emphasis in original.) *Id.* at ¶ 16, quoting *Irwin v. Murray*, 2006-Ohio-1633, ¶ 15 (6th Dist.).

**Analysis**

{¶ 32} Upon review, the trial court determined Sutton violated the CPO when he made a post about M.B. on Facebook then included a tag which specifically reached out to M.B. We find, based upon the record and the applicable law, that the trial court's determination did not constitute prior restraint on Sutton's free speech rights, as Sutton was found guilty of violating the CPO by contacting/initiating contact, he was not found guilty of posting about M.B. While the trial court mentioned that Sutton posted about M.B., this comment was not the basis for the guilty finding. Moreover, we find *Bey* does

13.

not apply as *Bey* involved regulating the content of a defendant's speech while the CPO issued against Sutton did not restrict the content of his communications - it prohibited contact with M.B. We therefore find no plain error. Accordingly, Sutton's second assignment is not well-taken.

**Conclusion**

{¶ 33} The judgment of the Toledo Municipal Court is affirmed. Pursuant to App.R. 24, Sutton is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.
_____
JUDGE

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.